The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COVA CAMPBELL,<br><br>Defendant. | NO. CR 20-5065RJB<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

## I.    Introduction

Cova Campbell will be sentenced for her multi-year scheme to exploit her position at Pierce County Housing Authority (PCHA) and steal millions of dollars to fund her lavish spending.  Ms. Campbell stole money that was intended for use for low-income housing.  This fraud injured the PCHA and the residents it serves; it was also a terrible breach of trust placed in Ms. Campbell.  Ms. Campbell's sentence should reflect the nature of her crime and the injury it caused.  The government respectfully recommends that this Court impose a sentence of 60 months' imprisonment.

## II.    Factual Background

### A.    Pierce County Housing Authority

Pierce County Housing Authority (PCHA) is a municipal corporation that manages various apartment communities in Pierce County and assists with the Section 8

GOVERNMENT'S SENTENCING MEMORANDUM - 1
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

housing vouchers process.  *See* http://www.pchawa.org (last accessed August 10, 2021).  PCHA provides housing assistance to Pierce County residents in need, including the very vulnerable in the community.  According to victim statements submitted in this case, more than a third of the residents served by the PCHA are children and PCHA also serves a significant population of disabled individuals and homeless veterans.  *See* Victim Impact Statements at 5.

PCHA does not levy taxes for its funding.  Instead, PCHA receives its funding from bonds, from rent payments from its residents, and from Federal, State, local, and private sources.  *See* http://www.pchawa.org (last accessed August 10, 2021); Dkt. #28, Plea Agreement at ¶ 7a.

### B. Former PCHA Finance Director Cova Campbell

The defendant Cova Campbell (formerly Cova Hunter) was employed at PCHA for more than 20 years.  For the last thirteen years, from 2006 to 2019, Ms. Campbell was the Finance Director.  In that role, Ms. Campbell had responsibility for PCHA's bank accounts; Ms. Campbell had the authority to wire money from those bank accounts; Ms. Campbell had the ability to pay invoices; Ms. Campbell could account for expenses.  Plea Agreement at ¶ 7b.

Beyond this list of tasks and responsibilities, the government's investigation found that Ms. Campbell had almost complete control over the finances of PCHA.  This control is shown in the Victim Impact Statements included with the Presentence Report – "Cova strictly controlled all financial activity and information related to it."  Victim Impact Statements at 11.  The government's investigation showed that Campbell tightly controlled the finance department and the other PCHA financial employees that she supervised.  *See* Victim Impact Statements at 3.  As one PCHA employee put it, the financial employees that reported to Campbell worked "in an environment that strongly discouraged questions and independent thinking."  Victim Impact Statements at 11.

//

//

GOVERNMENT'S SENTENCING MEMORANDUM - 2
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C. Defendant Campbell Stole Millions from PCHA

#### 1. False Invoices Scheme

Ms. Campbell abused her control of the finance department of PCHA to steal millions. As described above, Ms. Campbell had the authority to sign invoices. She also was one of the few employees who had access to the bank account statements. With this access to PCHA money and the financial system, beginning in 2016, and continuing to 2019, Ms. Campbell prepared and submitted false invoices that purported to charge PCHA for services that were not actually performed.

Ms. Campbell prepared these invoices to make it look like the invoice was created and submitted by PCHA's real outside vendors. Ms. Campbell altered the invoices in an important way – she changed the bank account number. She altered an invoice to include her personal bank account number to make it appear that her personal account was the proper bank account for PCHA to send a direct payment. Between 2016 and 2019, Campbell submitted more than 50 different false invoices, typically in amounts greater than $10,000, but less than $100,000. Ms. Campbell approved the payments and caused the PCHA accounts to pay her personal account more than $3 million. Ms. Campbell concealed the payments of these false invoices from other PCHA employees by causing the false invoices to be paid at the same time as legitimate invoices.

#### 2. False Wire Transfer Scheme

Perhaps emboldened by the success of the false invoices scheme, Ms. Campbell increased her theft from PCHA in 2018 and 2019. In those years, Ms. Campbell used her authority and discretion as PCHA Finance Director to make 13 unauthorized wire transfers from PCHA accounts to bank accounts that she controlled. These wire transfers were in huge amounts – larger than the false invoices – and ranged from $100,000 to $500,000. To execute this scheme, Campbell called the national wire transfer center for the PCHA bank account and directed wire transfers of PCHA funds from the PCHA bank account to her accounts or otherwise for her benefit.

GOVERNMENT'S SENTENCING MEMORANDUM - 3
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

For example, in September 2018, Campbell caused a transfer of $200,000 from the PCHA general operating bank account to an escrow account in connection with her purchase of land in Oklahoma. In January 2019, Ms. Campbell caused a transfer of $275,000 from the PCHA general operating account to her personal account. In February 2019, she caused another $250,000 to be transferred from PCHA to her personal account. In March 2019, Ms. Campbell caused a $500,000 transfer from the PCHA bank account to her personal account. Ms. Campbell called an initiated additional wire transfers in May 2019 and July 2019.

Defendant covered up these fraudulent transfers of PCHA money by making false entries in PCHA's accounting records that described these wires as "investments." In this way, Ms. Campbell took more than $3 million from the PCHA bank account.

### 3. Ms. Campbell spends the millions

From 2016 to 2019, Ms. Campbell diverted more than $6.9 million in PCHA funds for her own personal use. Ms. Campbell spent more than a million dollars to pay for her purchase of land in Oklahoma and for improvements on that land. Also, Ms. Campbell sent hundreds of thousands of dollars of the money that was taken from PCHA to J.M.C., an individual who later became Defendant's husband. Defendant used the money to pay for improvements to her residence in Lakewood. Defendant used other stolen money to pay for travel, including a trip to Las Vegas and for the use of a private jet. She used other diverted money to pay for gambling and internet gaming. She used other money to purchase two automobiles.

### 4. State Auditor's Office Investigation

In the summer of 2019, the Washington State Auditor's Office (SAO) conducted a regularly scheduled audit of PCHA. As a part of the audit, the SAO observed three wire transfers from 2018, including the transfers to an Oklahoma bank in connection with the purchase of real property in that state. The SAO asked Campbell about the large wire transfers. In response, Ms. Campbell told the SAO that these transfers were for investments and that she later canceled those transfers. Despite this denial, the SAO

GOVERNMENT'S SENTENCING MEMORANDUM - 4
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reviewed property records in Oklahoma and saw that Ms. Campbell had purchased property in Oklahoma at the same time as the wire transfers. The SAO's investigation soon uncovered additional wire transfers from PCHA to Campbell's personal bank accounts in 2019.

Shortly after the SAO began its investigation, Ms. Campbell was placed on administrative leave and stopped working at PCHA. Soon after, she was fired. Ms. Campbell then left the state of Washington and moved to Oklahoma.

## II. Prosecution, Plea Agreement, and Presentence Report

On February 5, 2020, the grand jury returned an Indictment charging Ms. Campbell with four counts of wire fraud. *See* Indictment, Dkt. #1. On March 2, 2020, Ms. Campbell was arrested in Oklahoma and had her initial appearance. Dkt. #6, 7. Ms. Campbell made her initial appearance in this District of March 17, 2020 and was released on a bond. Dkt. #13, 14.

On January 15, 2021, Ms. Campbell pleaded guilty to a single count of Wire Fraud, in violation of Title 18, United States Code, Section 1343, pursuant to a plea agreement. *See* Plea Agreement, Dkt. #28. Ms. Campbell admitted that she took $6.9 million from PCHA as part of her fraud. Plea Agreement at ¶ 7h. Ms. Campbell also agreed to pay restitution in the amount of $6,997,486.85. Plea Agreement at ¶ 10.

In the Plea Agreement, the parties made certain agreements as to guidelines – that the loss was between $3.5-$9.5 million, and that Ms. Campbell abused a position of trust. Plea Agreement at ¶ 8. Based on a criminal-history category of I, and credit for acceptance of responsibility, the applicable Sentencing Guidelines' range of imprisonment is 51-63 months.

## III. Sentencing Recommendation

The § 3553(a) factors warrant a sentence of 60 months' imprisonment and three years of supervised release.

//

//

GOVERNMENT'S SENTENCING MEMORANDUM - 5
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### A. Nature and Circumstances of the Offense –Defendant's fraud affected low-income housing recipients and the employees who served them

Ms. Campbell deserves a significant sentence because she stole money that was intended to benefit vulnerable Pierce County residents. These residents need housing – a basic human need that has become more and more difficult to obtain in Western Washington. Ms. Campbell did not steal from some faceless, far-away corporation, but the local housing authority. As the Victim Impact Statements make clear, this money was intended to expand and improve housing options in our community. *See* Victim Impact Statements. The type of victim in this case is a factor that support a significant prison sentence.

Ms. Campbell further deserves a significant sentence because she abused her position of trust at PCHA. Ms. Campbell had almost complete control over the finance department of PCHA. Because of Ms. Campbell's seniority, and because she was a hard-worker, she gained control over all aspects of the department. Both management and her co-workers trusted her with the finances of PCHA. *See, e.g.*, Victim Impact Statements at 11 (co-workers "trusted Cova implicitly"). It was because Ms. Campbell had such trust and such discretion that she was able to siphon off millions of PCHA money for years through the false invoice scheme without detection. Not only that – she was able to make large wire transfers out of the PCHA bank accounts for almost a year without raising suspicion. Ms. Campbell abused that trust – and as the Victim Impact Statements make clear, the PCHA organization is suffering from that breach.

Besides the PCHA organization as a whole, Ms. Campbell's crime also particularly affected the employees of the finance department. When the crime first came to light, the finance department employees were affected because they were suspected. Then, once it became clear that Ms. Campbell acted alone, the employees felt blame and shame for failing to stop their boss's criminal acts. The impact on these other employees is another factor that supports the sentence here.

//

GOVERNMENT'S SENTENCING MEMORANDUM - 6
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### B. Nature and Circumstances of the Offense – Defendant's fraud was long-running and motivated by greed

A 60-month sentence is appropriate in this case because of the nature of the offense itself. This was not a one-time theft – this was not an aberration. This was a calculated long-term fraud. This scheme only stopped when the SAO investigated. There is no indication of Ms. Campbell's remorse or attempts to return the money prior to getting caught.

Further, the offense deserves a significant sentence because of the motivation – greed. Ms. Campbell used the PCHA money to fund a lavish lifestyle. She flew on a private jet, she took trips, she purchased new cars. She spent more than $1 million to purchase farm land in Oklahoma and then make improvements on that land. She stole that money and did what she wanted with it.

Ms. Campbell's cooperation with the civil proceedings and her timely guilty plea have been factored in the government's 60-month recommendation. While it's true that Ms. Campbell has started making restitution payments, those payments are the result of civil lawsuits filed against her and her husband. Ms. Campbell never came forward during the time of the fraud.

### C. The Need for Adequate Deterrence, the Sentencing Guidelines and similarly situated defendants.

The sentence in this case must send a clear message to the public and other would-be offenders that there are serious consequences for defrauding a public entity like PCHA. A five-year sentence – a guideline sentence – sends that message.

The Sentencing Guidelines also support a 60-month sentence. Consistent application of the Guidelines avoids unwarranted disparities in cases involving similar conduct. Of course, there are often valid reasons to depart from the applicable Guidelines, but no such reasons apply in this case. The government respectfully disagrees with the Probation Office's below-guideline recommendation of 48 months. Recommendation at 4-5. The government also disagrees with defense's characterization of the civil matter PSR at ¶ 81, 84. Ms. Campbell's settlement of the civil matter is not

GOVERNMENT'S SENTENCING MEMORANDUM - 7
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"cooperation" – she took unquestionably stole the money, PCHA sued her, and she settled. She did not return any money before the lawsuit.

### D. Supervised Release and Restitution

The government requests that the Court impose a three-year term of supervised release with the conditions recommended by the Probation Office. *See* Recommendation at 2.

The government also requests that the Court impose restitution in the full amount of $6,997,486.85, as follows: $5,909,986.85 to PCHA, $587,500 to Key Bank, and $500,000 to Travelers Insurance. Plea Agreement at ¶ 10. The government understands that Ms. Campbell has paid some money to PCHA as a result of civil proceedings. The restitution amount due to PCHA can be reduced when proof of payment is provided to the Clerk's Office and the government. *See* Plea Agreement at ¶ 10-b-i.

## V. Conclusion

Ms. Campbell's crime was a devastating theft from vulnerable residents of Pierce County based on greed. The United States respectfully requests that this Court impose a Guidelines' sentence of 60 months of imprisonment and three years of supervised release.

Dated this 20th day of August, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/Brian Werner*
BRIAN WERNER
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101

GOVERNMENT'S SENTENCING MEMORANDUM - 8
*United States v. Cova Campbell,* CR20-5065RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970